2021-1982, 2015. Mr. Schoenhardt. Thank you, Judge Lurie. Good morning, Your Honors. May it please the Court, Paul Schoenhardt today appearing on behalf of the Appellant, Selwitch Inc. Selwitch respectfully requests that this Court reverse the Board's decision that Claims 1 and 12 of the 655 patent were obvious in view of the references Ritter and Duncan. Simply put, Ritter does not teach further configuring a buddy terminal to monitor a device associated with someone else. Neither party argued that Ritter includes such a disclosure at any point earlier in the proceedings, and the only way the Board could have reached that decision is through an incorrect, implicit construction of the term monitor. And so this Court is seeing a briefing on the distinction between to monitor and to detect as a claim construction dispute that previously below was represented as an argument over whether Ritter or Duncan performed the buddy monitoring functions. My understanding of the briefing is there's an argument between the parties on whether you waived this claim construction argument about monitoring. Is there some place in your patent owner response that we could look at where we can see that you broke out in a claim construction argument, your understanding of what monitoring must entail? At no point was monitoring presented as an issue of specific claim construction. Both parties treated monitoring as a plain and ordinary meaning, and in fact, as there was no argument that Ritter disclosed monitoring someone else's tag so as to satisfy the buddy limitation, there was no reason for Selwitch to believe that any special construction of that said from the start of the proceedings below, Selwitch was consistent throughout that there was a distinction between monitoring and detecting. That can be found in the appendix at 660. That was in the patent owner response. Again, the patent owner brought this up again in its SIR reply. I believe that is the appendix at 1146. The board clearly recognized this and stated in the board's decision in the appendix at 43 that patent owner's assertion that finding another's tag is a very different thing than monitoring another's tag is unavailing. The board thus clearly recognized that Selwitch was drawing a distinction between monitoring and detecting, had done so throughout the proceedings. Tile had every opportunity to respond to that argument, and yet throughout the proceedings, Tile never argued that Ritter disclosed monitoring someone else's tag. That first came out in the board's final written decision, and that is what now prompts the appeal as to the implicit claim construction that could possibly yield that result. Put more specifically, in the petition, both Tile and its expert, Mr. Schmandt, explained that Ritter would need to be modified to satisfy the body limitations. Stated that the modification Ritter would need, if any, to disclose this limitation is to allow the mobile device to use the same proximity monitoring it was already using for its own associated tags to act as a buddy by monitoring the proximity of another tag that it was already communicating with if nearby. In other words, Tile and its expert recognized that Ritter would need to be modified so as to permit such further configuration so as to monitor someone else's tag. In the final written decision, this is the first time we actually saw anyone, and it turned out to be the board itself state that the disclosure of Ritter somehow accomplishes such monitoring. Didn't the board say something about how your expert admitted that Ritter's searching continuously or periodically for tags operates in the same way as the polling technique disclosed in your patent? It did, Your Honor, and this actually helps highlight the board's misunderstanding of what it means to monitor. To monitor a tag, under its plenary meaning, in fact means to track a particular tag. Not to be searching generally for what tags out there, but in fact to track the particular thing being monitored. That is actually how both parties presented monitoring throughout the proceedings up through receipt finally of the board's final written decision. The board mistakenly understood the polling mechanism, which is only a portion of the process, as itself being monitoring. The patent is quite clear about what a process to monitor would be, but with reference to that is the process, or the portion of the process that is the same both for detecting and for monitoring. Whatever tags are detected as a result of the polling, their identifications are compared against the information stored in the wireless terminal as to which tags is it supposed to be monitoring. Not just what can it detect, but which tags is it supposed to be monitoring. If there is a mismatch, if a tag in the list of tags that are supposed to be monitored, if that identity is not among those that are detected, then an alert will be sent out. That's a recognition of what I am trying to monitor has not been detected. Both monitoring and detecting result on polling, or rely on polling in the first instance, so as to determine what can be detected. But monitoring requires something more. Monitoring requires that there in fact be a reconciliation between what has been detected and what was supposed to be monitored. This was acknowledged by Tile even during the hearing before the board. This is how the patent describes monitoring in connection with Figure 6. Tile's argument now that the patent uses detection and monitoring interchangeably is really an argument in the first instance that was not made previously below and also is belied by the specification. We direct the court beyond the general teachings of the specification, including of Figure 6, also to Claim 23, where in Claim 23 it is claimed that a wireless terminal can be configured to detect tags that it has not been configured to monitor, further confirming that the patentee understood that those terms were different as they have been used differently in connection with Figure 6, Figures 10, and Figures 11. If a proper construction of monitoring is recognized, there can be no substantial evidence that Ritter does not disclose monitoring of someone else's tag. The evidence to which the board points is exclusively the teachings of Ritter's third party that can detect any tags that are out in the field, including those that might be registered to other folks. That again is simply detection. There is no disclosure in Ritter that such third party actually monitors such tags. It is searching for tags. It can detect tags, but it is not monitoring any tag associated with someone else. I realize I'm eating into my rebuttal time, but I do want to get to that point of association because Tile's backstop argument is that the reference, Duncan, can supply what Ritter is missing in this regard. Duncan is missing any concept of association, and association is quite important to the claims of the 655 patent. In the 655 patent claims... What about storing the ID number of the tag? Storing an ID number of a tag, that is configuration. That is deciding what I am authorized to monitor. That is not an association. If that were association, there would be no reason in the claims to identify association and then say, and is configured to monitor. It would also render the buddy limitation superfluous because if every tag that you are configured to monitor, you are necessarily associated with, the first element of claim one and the first step of claim 12 would accomplish this entire concept. What is really special about the 655 patent is this buddy notion that there can be terminals that are associated with tags, but then there can also be terminals that are not associated with those tags, but are nonetheless further configured to monitor them. That is the type of authorization to monitor that Duncan discloses, but that is authorization to monitor, the configuration to monitor, not association as between a particular terminal and a particular tag, such that a buddy that is associated with its own tags, because it needs to be one of the terminals of the first element, and is further configured to monitor someone else's, in other words, a tag that is associated with someone else, that buddy needs to be able to monitor things at two different levels. It needs to be able to monitor things that are associated with it and that it's its. There's some notion of a pervasive logical connection or possession. It's configured to monitor its tags and configured to monitor tags that are not its. Duncan does not suggest any notion of which ones belong to or are logically connected to beyond just authorization to monitor. I am significantly into my rebuttal time and I recognize there is a cross appeal here, so as to the issue of the base station, I would leave that on the papers and commend those to the court's consideration, unless there are further questions for me now. We will save the rebuttal time. Good morning, may it please the court. I want to start with one issue that Selvidge's Council just brought up as a predicate to its arguments regarding monitoring and Judge Chen's question regarding the waiver issue. Selvidge just represented that Tile hadn't represented below that Ritter disclosed the monitoring functionality of Claims 1 and 12. That's just wrong. In the petition at Appendix 155 through 156, Ritter and its disclosures relating to its polling, receiving of responses, receiving and processing of the identifications and so forth is part of the petition. There's just simply no basis to say that this wasn't before the PTAB and there was no notice. The other issue that sort of gets lost in the opening statements is that Duncan was also relied on by the PTAB in its final written decision as disclosing the monitoring steps. That's not something with respect to monitoring that is challenged by Selvidge on appeal. Even if you were to credit the arguments regarding monitoring, there's already a basis to affirm on the unchallenged Duncan theories. I would point you to Appendix 46 and 47, which is the final written decision where the board made findings that Duncan also met those limitations. Turning back to the request for an interpretation of monitoring and associated with that Selvidge makes on appeal, the issue before this court is sort of muddled, I think, from what Selvidge requested in its opening brief. If you look at their blue brief at page 32, they actually state that at least with respect to monitoring, they don't think that this court has to construe what monitoring means. Then that devolves into a substantial evidence issue, which is not something that they actually contest on appeal, that under the board's approval evidence for both the monitoring and the associated with limitations. Even still for monitoring, the plain and ordinary meaning for the terms would need to be consistent with what's disclosed in the specification and the disclosed embodiments. Title agrees that Figure 6 is an example embodiment of monitoring. When Figure 6 and its related disclosure state is that it's a polling and response process, it doesn't give any special meaning or process for what's done with identifications. It's just that the identifications are ascertained. What about the correlating the identities to the stored identities? I'm sorry? The step in Figure 6 of correlate identities to stored identities. Understood, Your Honor. I think that's not what it would entail. The board properly... That part of monitoring. I think it, yes. It can be part of the monitoring process is to collect and process the identifications, which is what Ritter disclosed and what the board found. Ritter does that correlation to stored identities? Ritter receives and processes the identities to affect its system of alerting at least the first device's user and relay that information back. I think that that's a reasonable reading of Ritter, but I don't think that you need to do that analysis here because the board also relied on Duncan and Duncan's not challenged. Turning to associated with, the issue is a little bit muddled on the appeal. Associated with is a broad term that has a readily understood plain and ordinary meaning. It's actually used three different times in the claims. It's used in the first couple of limitations, including the preamble. Notably, below, Selwitch didn't challenge those limitations at all that they were found in the combination of Ritter and Duncan. It didn't challenge whether associated with had some special meaning with respect to those limitations. What we have here is really a dispute on associated with that appears only in the buddy limitations of claims one and 12. It's really just referring back to an association with respect to the first monitoring terminal and its associated tag, which is again not something that was challenged under either Ritter or Duncan below. There's nothing in the plain language of the claims that requires a special relationship for the buddy with the tag. For instance, there's no language that would weigh in favor of importing a negative construction with respect to the buddy terminal device that it can't be associated as well with the same monitored device or tag, depending on what references language you're relying on. In that respect for Duncan, it's totally fair for the PTAB to have considered that Duncan disclosed the appropriate associations because there is undoubtedly an association between the first parent device and the tag on the child. There was a second device that's able to perform all of the same monitoring steps with respect to that same tag. There's no reason to import, like I said, there's no reason to import that negative limitation that would in effect require the buddy to not have an association. Are you going to speak to your cross appeal? Yes, I am, Your Honor, and I'll turn to that now if there's no further questions on the claims 4 and 16 and their dependence. There's two fundamental issues that I want to address today. The first is the PTAB engaged in improper claim construction below. The second, the board applied the wrong law for obviousness. Each constitutes reversible error as a matter of law. Turning first to the first issue regarding claim construction, what the PTAB did was do an end run around well-established law, seized on an interpretation based on a statement of an expert that was of questionable context to avoid altogether looking at the intrinsic evidence and especially the claim language to determine if the understanding that it applied of claims 4 and 16 was appropriate under the claim language. The claim limitation says something like, the database collects and stores data. That's claim 1, right? In claim 1, there's a recitation of the database collecting and storing data that relates to the wireless terminals or the devices. When a database collects data, what does a database do with that data that it collects other than storing that same data? I understand your comment. It kind of feels like one goes with the other, especially in the context of a database. I think that... A database is catching the data, collecting it, and then it's putting it in storage. That's what databases do. I understand, Your Honor. First thing that I'll point out is... Or is there something in the patent that suggests there's a subset of the data that is collected by the database that it does not store? It throws it away or does something else with it? Two responses to that, Your Honor. Claim 12 doesn't actually recite anything about a database. It really is just the processing system that is recited as collecting and storing. There's no database requirement at all in claim 12. Did you argue that separately from claim 1? Yes. That is noted a few different times in both the red brief and the gray brief. Counsel, you wanted to talk about your cross appeal, which is claim 4. Claim 4 adds time of day and location, right? Correct. That's what distinguishes the claims involved in the cross appeal. It distinguishes those claims on the cross appeal with respect to the collected data that's recited in claims 1 and 12. Judge Chen, going back to your question about whether the specification contemplates a situation where a database may collect but not necessarily store, there is disclosure in claims 7... Sorry, columns. Let me see if I've got that correct. Yes. At appendix 112, columns 7 and 8, there's a discussion of a few different examples of a situation where the 655 system might collect information, for instance, signal strength... Sorry. Information from the tags about signal strength and other things and then make a calculation to do some other determination. That's an instance where the processing system or even a database, for instance, may ingest data but then not store it. Counsel, you wanted to save some time on the cross appeal if there's something to respond to. I do, Your Honor, but I do want to briefly address the second issue in the cross appeal of the application, the misapplication of the obviousness standard. The grounds for claims... You don't think the board understands the law of obviousness? I think the majority got it wrong. The dissent, which is a rare PTAB case where there's a dissent, got it correctly and applied the appropriate analysis and looked at what the references suggest and looked at them for all that they teach. The majority, on the other hand, despite it being an obviousness ground, expressly refused to consider obviousness in footnote five of the final written decision at appendix 84. Just to clarify, when I read the dissent, the dissent part, I don't read that board judge as somehow doing some kind of modification to the teachings of Ritter that would make it obvious to store the data in the database of Ritter. My understanding of that dissent is instead saying, when you read that reference for all that it teaches, the most logical inference to take away from Ritter, and one of ordinary skill in the art would read this, is that the collected data is being stored in that database. I do not read her as saying that she's going to independently engage in some kind of obviousness type analysis as to whether the Ritter reference somehow would be obvious to modify it so that it stores data. I feel like this is a misreading on your part to suggest that, number one, that's what the dissent did. In addition, relying on cases that I don't think stand for what you say they stand for, which is that when you say that in a 103 context, reference number one discloses limitation X, and then reference number two discloses limitation Y, and then it would be obvious to combine those two references, that now the board is charged with not only looking at whether those references teach what you say that they teach, but that they also have to independently on their own expand their mind and try to imagine whether it would likewise also be obvious to modify the teachings of those references to satisfy those limitations. I don't know of any case that actually says that, that we've charged the board to try to expand on the petition in that way and on its own volition try to imagine other things that the petition could have said but did not say. Understood, Your Honor, and I'll very briefly, so I have 10 seconds left for rebuttal, state that if we are to assume that your understanding is true of the dissent, those cases, and I'll point you to the N. Ray Prada case, also applies and requires a review of the references for all that they teach, and that one would at once envisage in that reference, even if you're applying a single reference analysis under anticipation. And with that I'll... We'll give you two minutes for rebuttal on the cross appeal if there's something to rebut. Mr. Shainhardt. Thank you again, Your Honor. To begin with a brief reply on the substantive appeal, it was represented that Duncan is left unchallenged. I believe the briefing makes quite clear that in fact Selwich does challenge whether Duncan teaches the buddy feature, the monitoring of both its own tag and a tag associated with another. The question... I mean, I know you challenged the part about the associated with, about the monitoring. Your Honor, that's exactly what we're challenging. Associating, so we do not challenge whether... Oh, I see. They're kind of smushed together in that sense. There necessarily is. Duncan does teach monitoring of tags. That is not disputed. Duncan does not teach monitoring a tag with which a terminal is associated and also further configured to monitor a tag associated with someone else because there is no concept of association. So what is being monitored from the perspective of association is not disclosed in Duncan. But we acknowledge that Duncan does teach generally the concept of monitoring, which is why the first element of Claim 1, the first step of Claim 12, remains unchallenged to that degree. The question was put as to what we're doing here, whether there's a substantial evidence question as to how the Board addressed this. This is something this Court has grappled with somewhat frequently when dealing with implicit claim constructions from the Board and at times implicit claim constructions from district courts. Here, on the face of the plain language, substantial evidence does not support Ritter's disclosure of the monitoring of someone else's tag. There is no substantial evidence for such a finding. That is under a plain language reading of Claims 1 and 12. The Board did not make any special construction of Claims 1 or 12 such that it ultimately, to some degree, is to this Court's discretion in the language of its ultimate opinion whether it is reversing on substantial evidence grounds based on the plain language alone or whether it is reversing an implicit construction and then on the basis of the cross-appeal. Yes, Your Honor. Why doesn't Ritter's database store this location data? There's no disclosure anywhere in Ritter that location of loss information is ever conveyed onward to Ritter. There is a disclosure at paragraph 58 of Ritter that at the time of registration... I mean, just to step back and understand how Ritter works, it's similar to Ritter's claimed invention in the sense that we've got tags out there and we've got a phone or something like a phone that's trying to stay in connection with those tags and then at a certain point they break the connection because the tag has moved too far away from wherever the phone is and then there's a signal that's sent to the phone about that and then there's a broadcast to a geographic area surrounding that location where the tag got lost to all available mobile phones in that area to let them know about this lost tag. So why wouldn't that server not only learn about that information about the location of where the tag was lost, but also why wouldn't they also store that information? Your Honor, I believe you're making an incorrect assumption about that broadcast message in a limited geographic area. There is no statement in Ritter that such broadcast is in the limited geographic area where it was reported that the tag was lost. The only location information that is disclosed in Ritter as being stored in the database is at the time of registration. That's disclosed in paragraph 58 of Ritter. At the time of registration, the owner of the tag stores in the database the location where the tag is. Imagine, for instance, I were to register a tag here at the courthouse. Ultimately, if there is to be a loss, it would be very sensible, consistent with the teaching of Ritter, to send out a blast in the limited geographic area of the Washington, D.C. metro area. But there is nothing in Ritter that says that that blast is based on any communicated data regarding where the tag was last seen or where the tag was lost. There is no disclosure at all that location of loss information or time of loss information is ever communicated from the owner's device upward. There is only a communication that a loss has occurred. Now on appeal, tile points to paragraph 58, time of loss information. Notably, that paragraph was not cited in the petition and for good reason because that paragraph relates to registration and the recordation of information at time of registration, not at time of loss. Thank you, counsel. Thank you. Ms. Gelsky has a couple of minutes for rebuttal on the cross-appeal. Thank you, your honor. I wanted to touch on, I think it was Judge Chen's question to Selwich's counsel regarding what Ritter actually discloses with respect to the database and collecting and storing. There is no dispute that Ritter has a database, database six. There is no dispute that Ritter discloses, at least in general, that it collects location of the tag or patch when the tag exceeds the communication range. We point that out in our red brief at page 61, pointing... Is this on the cross-appeal? Yes. Appendix, citing appendix 620, which is Ritter paragraph 62. There is no dispute that loss notifications can be sent by the database. Specifically, there is no dispute that Ritter's database six communicates notification of loss in the area of the location of the tag. I can provide you, let's see, petition that's argued at appendix 164, relying on the expert declaration at appendix 578 through 79, citing to Ritter paragraph 61. For the NRA PREDO case that I discussed previously, that was exactly what the expert looked at. That disclosure of the database being able to send that notification in the area of loss was obvious to somebody or suggested to somebody of ordinary skill in the art that that meant that the Ritter database six would have had to have received the location information of the loss. And on that record, under the appropriate case law and legal application, that was error for the court to not credit. Thank you. Thank you, counsel. Case is submitted.